*ALBANY, Dec. 1826*

Dyett
v.
Pendleton.

For affirmance 7.

For reversal 19.

---

JOSHUA DYETT, plaintiff in error, *against* JOHN B. PENDLETON, defendant in error.

Where the lessor was guilty of habitually bringing lewd women under the same roof with the demised premises, though in an apartment not demised, by which nocturnal noise and disturbance were made; and, in consequence, the lessee quitted the premises and remained away with his family; held, that this was evidence to go to the jury under a plea of eviction by the landlord, in answer to a declaration for the rent; and that the jury might, upon such evidence, find the plea true; and the lessor would thereby be barred of his rent, the same as on an actual or physical entry and expulsion of the tenant.

The usual plea in bar, of entry and eviction, would be sustained by such evidence.

*Dicta. Pleading is the formal mode of alleging that on the record, which would be the support or defence of the party, in evidence. Whether supported by proof, is a question on the trial. It states the legal effect of facts; not the facts themselves. Per SPENCER, senator.

[*728]

Legal eviction of the tenant, by a third person, excuses the payment of rent. So any eviction by the lessor. If the eviction be partial by a third person, the rent will be apportioned, but a partial eviction by the lessor, excuses from the payment of the whole rent. Per SPENCER, senator.

ALBANY,    A lessor erecting an intolerable nuisance, so as to deprive the lessee of his
Dec. 1826.      enjoyment, would be equivalent to an expulsion.   Per SPENCER, senator.
Dyett      A party who deprives another of the consideration upon which his obliga-
v.          tion is founded, cannot, in general, recover for a violation of that obliga-
Pendleton.       tion.   Per SPENCER, senator.

On error from the supreme court.   The cause came here
on a bill of exceptions, containing the same facts stated in
the report of the same case in the court below.   (*Pendleton*
v. *Dyett*, 4 Cowen, 581.)   The main facts will also be
found stated in the opinions of CRARY, COLDEN and ALLEN,
Senators.

The reasons of the supreme court were now assigned,
substantially as in that report, p. 583 to 587.

The cause was argued here by

*H. W. Warner*, for the plaintiff in error.

*J. A. Dunlap*, contra.

The plea, SPENCER, Senator.   It seems to be conceded that the
and proof ne-
cessary under only plea which could be interposed by the defendant be-
it.     low, to let in the defence which he offered, if any would
answer that purpose, was, that the plaintiff had entered in
and upon the demised premises, and ejected and put out
the defendant,   Such a plea was filed ; and it is contended
on the one side, that it must be literally proved, and an
actual entry and expulsion established: while on the
other side it is insisted, that a constructive entry and expul-
sion is sufficient, and that the facts which tended to prove
Definition it, should have been left to the jury.   It is true, that
of pleading. " pleading is the formal mode of alleging that on the re-
cord, which would be the support or defence of the party
on evidence," as defined by Buller, J., in 1 Term Rep.
159 ; and the same learned judge immediately after draws
[*729]    the *correct distinction : " whether the evidence in each
particular case is a sufficient foundation for that support or
defence, is a question that does not arise upon pleading, but
upon the trial of the issue afterwards."   In pleading, the
legal effect of the facts is stated, not the facts themselves.

The form of the plea therefore, does not determine the kind of evidence necessary to establish it.   To support a plea that the defendant never promised, he may prove a payment, or a performance of his undertaking, or some matters which excused him from its performance.   A very familiar case is presented in the action of trover, which has been partly alluded to on the argument.   The plaintiff alleges, that he casually lost the chattel, which the defendant found and converted to his own use.   It is very questionable, whether, if this were strictly proved precisely as alleged, it would support any action.   The proof, however to sustain it, is either that the defendant tortiously took the chattel, which is itself evidence of a conversion, (and directly contrary to the allegation of finding,) or that the defendant came legally into the possession of the article, and subsequently, on a demand made, refused to restore it to the owner.   From this a conversion is implied.   But it is plain it is not proved.   So in an action against the indorser of a note, the averment of a demand of payment and of notice of non-payment, is supported by evidence of due diligence without actual demand.   Again, a promise by the indorser, to pay a note, dispenses with the necessity of proving a demand and notice.   There are many similar cases, where the proof of one fact justifies the legal conclusion of another fact.   This, then, is a question of principle, whether the evidence offered by the defendant below tended in any manner to establish a constructive entry and eviction by the plaintiff; for if it did, it should have been left to the jury to decide on its effect.

To determine this, it seems only necessary to inquire what are the conditions express or implied, on which the defendant was to pay the rent.   The agreement set forth in the plea, contains a covenant that the defendant shall *have " peaceable, quiet and indisputable possession " of the premises.   This is, in its nature, a condition precedent to the payment of rent; and whether the possession was peaceable and quiet, was clearly a question of fact for the jury.   Such conduct of the lessor as was offered to be proved in this case, went directly to that point; and without saying

ALBANY,
Dec.  1826.

Dyett
v.
Pendleton.

Whether supported in proof is a question on the trial.

Pleading states the legal effect of facts; not the facts themselves.

The evidence was admissible and should have gone to the jury.

[*730]

ALBANY.
Dec. 1826.
──────
Dyett
v.
Pendleton.

at present, whether it was or was not sufficient to establish a legal disturbance, it is enough that it tended to that end, and should have been received, subject to such advice as the judge might give to the jury.

The opinion of the supreme court proceeds upon the ground that there must be an actual physical eviction, to bar the plaintiffs; and in most of the cases cited, such eviction was proved; and all of them show that such is the form of the plea. But the forms of pleading given, and the cases cited, do not establish the principle on which the recovery of rent is refused, but merely furnish illustrations of that principle, and exemplifications of its application. The principle itself is deeper and more extensive than the cases. It is thus stated by Baron Gilbert, in his essay on rents, p. 145: "A rent is something given by way of retribution to the lessor, for the land demised by him to the tenant, and consequently the lessor's title to the rent is founded upon this: that the land demised, is enjoyed by the tenant during the term included in the contract; for the tenant can make no return for a thing he has not. If, therefore, the tenant be deprived of the thing letten, the obligation to pay the rent ceases, because such obligation has its force only from the consideration, which was the enjoyment of the thing demised." And from this principle, the inference is drawn, that the lessor is not entitled to recover rent in the following cases: 1st. If the lands demised be recovered by a third person, by a superior title, the tenant is discharged from the payment of rent after eviction by such recovery.

2d. If a part only of the lands be recovered by a third person, such eviction is a discharge only of so much of the rent as is in proportion to the value of the land evicted. 3d. If the lessor expel the tenant from the premises, the rent *ceases. 4th. If the lessor expel the tenant from a part only of the premises, the tenant is discharged from the payment of the whole rent; and the reason for the rule why there shall be no apportionment of the rent in this case as well as in that of an eviction by a stanger, is, that it is the wrongful act of the lessor himself, "that no man may be encouraged to injure or disturb his tenant in his

Recovery by a third person excuses payment of rent.

If of part, rent may be apportioned.

Expulsion by lessor in whole or part, excuses payment of whole rent.

[*731]

possession, whom, by the policy of the feudal law, he ought to protect and defend."

This distinction, which is as perfectly well settled as any to be found in our books, establishes the great principle that a tenant shall not be required to pay rent, even for the part of the premises which he retains, if he has been evicted from the other part by the landlord. As to the part retained, this is deemed such a disturbance, such an injury to its beneficial enjoyment, such a diminution of the consideration upon which the contract is founded, that the law refuses its aid to coerce the payment of any rent. Here, then, is a case where actual entry and physical eviction are not necessary to exonerate the tenant from the payment of rent; and if the principle be correct as applied to a part of the premises, why should not the same principle equally apply to the whole property demised, where there has been an obstruction to its beneficial enjoyment, and a diminution of the consideration of the contract, by the acts of the landlord, although those acts do not amount to a physical eviction? If physical eviction be not necessary in the one case, to discharge the rent of the part retained, why should it be essential in the other, to discharge the rent of the whole? If I have not deceived myself, the distinction referred to settles and recognizes the principle for which the plaintiff in error contends, that there may be a constructive eviction produced by the acts of the landlord.

An eviction cannot be more than an ouster; and we have the authority of Lord Mansfield for saying that there may be a constructive ouster. In Cowper, 217, he remarks, "Some ambiguity seems to have arisen from the term *actual ouster*, as if it meant some act accompanied *by real force, and as if a turning out by the shoulders were necessary; but that is not so: a man may come in by rightful possession, and yet hold over adversely without a title," &c.

I think the same principle governed an ancient case stated in 1 Rolle's Abridgment, 454, of which the following is a translation: "If the lessee for years of a house, covenant to repair it and leave it in as good plight as he found it, and afterwards certain sparks of fire come from a

[*732]

ALBANY,
Dec. 1826.

Dyett
v.
Pendleton.

chimney in the house of the lessor, not very distant, by which the house of the lessee is burned, that shall excuse the performance of the covenant; and the lessee is not bound to rebuild, because it came of the act of the lessor himself." The analogy between the covenant to repair and that to pay rent, is sufficiently strong to justify the application of this case to the latter; and if so, it establishes the doctrine that other acts of the landlord going to diminish the enjoyment of the premises, besides an actual expulsion, will exonerate from the payment of rent.[1]

That is precisely the principle contended for by the plaintiff in error in this case. It is a just and equitable doctrine, and has been so applied in analogous cases. In *Hearn* v. *Tomlin*, (Peake's N. P. Cases, 192,) which was an action for use and occupation of a wharf, (depending on the same principles as an action on a lease for rent,) the defendant had agreed to purchase the wharf under a representation of the plaintiff that he had a lease of it for 13 years, and entered into possession; but on discovering that the plaintiff had a lease for only 3 years, he refused to complete the purchase. Lord *Kenyon* held, that to maintain the action, it must appear that the occupation had been beneficial to the defendant, and that it appearing to have been injurious, the plaintiff could not recover.

*Hearn* v. *Tomlin*, Peake, 192.

We regard cases as containing the evidence of the law, as evincing the rule of decision; and they are consulted to ascertain the principle on which that rule is founded. The review of the cases now made, shows that the principle on

[1] Where an action was on the covenant for quiet enjoyment in a deed; and the question was whether there was an eviction or a disturbance of the possession. Spencer, J., in giving the opinion of the court, makes an evident distinction between an entry and expulsion from the possession, and an actual disturbance in the possession. *Waldron* v. *McCarty*, 3 John. Rep. 471. And the same distinction appears in *Hortz* v. *Carpenter*, 5 John. Rep. 120.

See New York Dig., vol. 3, tit. *Landlord and Tenant.*

Eviction by the landlord has no effect on rent already due. *Kessler* v. *M'Conachy*, 1 Rawle Rep. 435. A tenant from year to year, who is evicted by title paramount, is not liable for rent from the commencement of the action by which he was ejected. *Bandurs* v. *Fletcher*, 11 Serg. & Rawle, 419.

which a tenant is required to pay rent, is the beneficial en-
joyment *of the premises, unmolested in any way by the
landlord.    It is a universal principle in all cases of contract,
that a party who deprives another of the consideration on
which his obligation was founded, can never recover dam-
ages for its non-fulfilment.    The total failure of the con-
sideration, especially when produced by the act of the plain-
tiff, is a valid defence to an action, except in certain cases,
where a seal is technically held to conclude the party.  This
is the great and fundamental principle which led the courts
to deny the lessor's right to recover rent where he had de-
prived the tenant of the consideration of his covenant, by
turning him out of the possession of the demised premises.
It must be wholly immaterial by what acts that failure of
consideration has been produced; the only inquiry being,
has it failed by the conduct of the lessor?   This is a ques-
tion of fact, and to establish it, the proof offered in this
case was certainly competent.    I do not feel called upon to
say that those facts would have been alone sufficient.   Of
that the jury were to judge, at least, in the first instance;
and the question whether they amounted to a full and com-
plete legal defence, might have been presented in another
shape.    The only question for our decision is, whether that
testimony ought to have been received at all?   Believing
that it tended to establish a constructive eviction and ex-
pulsion against the consent of the tenant: that it tended to
prove a disturbance of his quiet possession, and a failure of
the consideration on which only the tenant was obliged to
pay rent, I am of opinion that it ought to have been re-
ceived; and that, therefore, the judgment of the supreme
court should be reversed, with directions to issue a *venire
de novo*.

I cannot omit the opportunity presented by this case, of
observing, that it appears to me to be one of those within
the view of the framers of our constitution, in the organi-
zation of this court.   When this court, of last resort, was
declared to consist of the senators, with the chancellor and
judges, it must have occurred, that the largest proportion
of its members would be citizens not belonging to the        [*734]

**Margin notes:**

ALBANY,
Dec. 1826.

Dyett
v.
Pendleton,

A party who deprives an-
other of the consideration
for his obliga-
tion, cannot recover for its violation.

legal profession. And it must, therefore, have been intended to collect here, a body of sound practical common sense, which would not overthrow law, but which would apply the principles and reasons of the law according to the justice of each case, without regard to the technichal refinements and arbitrary and fictitious rules, which will always grow upon professional men. And herein I conceive, is the great excellence of this court; that whenever it perceives a rule established by the inferior courts, pushed to such an extent as to produce positive injustice, it is within its power, as it most certainly will always be its disposition, to rescind or modify such rule. Several signal examp es of the exercise of this power might be cited in the decisions of this court. Were this, then, a case in which the law was considered settled by the supreme court that nothing but a physical turning a tenant out of possession would exonerate him from the payment of his rent, it would be precisely such as would require and justify the interposition of this court to correct it; not by making law, but by applying its familiar and elementary principles to a new case. Suppose the landlord had established a hospital for the small pox, the plague, or the yellow fever, in the remaining part of this house; suppose he had made a deposit of gunpowder, under the tenant, or had introduced some offensive and pestilential materials of the most dangerous nature; can there be any hesitation in saying that if, by such means, he had driven the tenant from his habitation, he should not recover for the use of that house, of which, by his own wrong, he had deprived his tenant? It would need nothing but common sense and common justice to decide it. No man shall derive benefit from his own wrong. The idea that the tenant has some other remedy to remove the evil, does not reach the case where the injury is already inflicted. Besides, it has been entirely exploded on the argument of this cause. For, in the very case where it is admitted, the tenant would be exonerated from the payment of rent, where there had been an actual eviction and physical expulsion by his landlord,

he has an adequate and effectual remedy under the statute to prevent forcible entries.

*But as has been before remarked, even the cases admit that the tenant may be exonerated from rent without a physical expulsion; and there is no necessity to call upon this court to establish the law of a new case. It is already established in conformity with what appears to me the plainest dictates of justice.

JONES, Chancellor, gave his opinion, substantially to the same effect.

CRARY, Senator. The question in this cause appears to me to depend upon the conduct of the parties. The enjoyment of the tenant is the consideration for which he agreed to pay rent. If he is deprived of that enjoyment by the wrongful act of the landlord, the consideration has failed; and whether it was an unnecessary and voluntary abandonment of the premises on the part of the tenant, or compelled by the moral turpitude of the landlord, is the only question material to be considered.

The facts offered to be proved on the trial are, substantially, that in February, 1820, from time to time, and at sundry times, the plaintiff introduced into the house, (two rooms upon the second floor and two rooms upon the third floor whereof had been leased to the defendant,) divers lewd women or prostitutes, and kept and detained them in the said house all night, for the purpose of prostitution; that the said lewd women or prostitutes would frequently enter the said house in the day time, and after staying all night, would leave the same by day-light in the morning; that the plaintiff sometimes introduced other men into the said premises, who, together with him, kept company with the said lewd women or prostitutes during the night; that on such occasions, the plaintiff and the said lewd women or prostitutes, being in company in certain parts of the said house, not included in the lease to the defendant, but adjacent thereto, and in the occupation or use of the plaintiff, were accustomed to make a great deal of indecent noise

The facts.

and disturbance, the said women or prostitutes often scream ing extravagantly, and so as to be heard throughout the house, and by the near neighbors, and frequently using obscene and vulgar language so loud as *to be understood at a considerable distance; that such noise and riotous proceedings, being from time to time continued all night, greatly disturbed the rest of persons sleeping in other parts of the said house, and particularly in those parts thereof demised to the defendant; that the practices aforesaid were matters of conversation and reproach in the neigh- borhood, and were of a nature to draw, and did draw, odium and infamy, upon the said house, as being a place of ill fame, so that it was no longer respectable for moral and decent persons to dwell or enter therein; that all the said immoral, indecent and unlawful practices and proceedings were by the procurement or with the permission and con- currence of the plaintiff; that the defendant, being a per- son of good and respectable character, was compelled, by the repetition of the said indecent practices and proceedings, to leave the said premises, and did, for that cause, leave the same on or about the beginning of March, 1820, after which he did not return thereto, &c.

This evidence, being objected to by the plaintiff's coun- sel, was rejected by the court, and is now to be considered as true.

The plea was an eviction; and the supreme court have decided this evidence did not support it, and was, there- fore, properly rejected. The view that I have taken of it has led me to a different conclusion. The supreme court consider the plaintiff guilty of an offence, and that "the police of the city, upon the complaint of the defendant, would have instantly taken the plaintiff and his associates into custody, and punished them by fine and imprison- ment, as often as the offence was repeated;" and for that reason supposed there was no moral necessity for abandon- ing the premises. This remedy is believed to be not only very imperfect, but particularly objectionable on principle, as affording to vice every indulgence, at the expense of vir- tue. It will be recollected that the place of prostitution

was the dwelling house of the plaintiff, who occupied the first floor. Fine, and imprisonment, then, unless perpetual, would not prevent him from returning to it; and if he should return, perfectly reclaimed, which is, scarcely possible, yet the imputation would rest upon the defendant, *of remaining under the same roof with him. But if the plaintiff should return unreclaimed, which is not probable, he would be very likely to re-commence his old business of prostitution, in which the defendant must come in for his full share, at least in public estimation.

<div style="text-align: right">ALBANY,<br>Dec. 1826.<br><br>Dyett<br>v.<br>Pendleton.</div>

Something is due to the dignity of judicial tribunals, not so much for the sake of those whose duty it is to preside, as for the sake of that justice which it is their duty to administer. Judicial robes can never inspire confidence, if the proper sense of right and wrong is not manifested.

In *Girardy* v. *Richardson*, (1 Esp. Rep. 13,) the action was assumpsit for the use and occupation of certain rooms belonging to the plaintiff. For the defendant, it was proved that she was a woman of the town; that the rooms had been let to her by the wife of the plaintiff, who, it was proved, managed the business of his house in letting the lodgings; that at the time of letting them, she was informed of the defendant's mode of life, and consented that she should be at liberty to receive male visitors, for the purpose of prostitution. Lord Kenyon ruled that under these circumstances the action was not maintainable; that the contract was *contra bonos mores*, and therefore could not support an action, and directed a verdict for the defendant.

<div style="text-align: right">*Girardy* v.<br>*Richardson*, 1<br>Esp. Rep. 13.</div>

Thus it appears, that if it had been known that the rooms were to be used for the purpose of prostitution, the contract would have been against good morals, and the rent could not be recovered. Can it be less against good morals, when the plaintiff himself has used the rooms on the first floor for the purpose of prostitution, to the particular annoyance of the defendant, an innocent and injured party?

The difference between the cases is, that in the one quoted, the plaintiff lets his rooms, knowing that they are to be used for the purposes of prostitution; in the one un-

ALBANY.
Dec. 1826.

Dyett
v.
Pendleton.

der consideration, he uses the rooms on the first floor for that purpose himself.

The whole science of law consists in the application of a few simple principles to the affairs and bosoms of men.' In *Collins* v. *Blantern*, (2 Wills. R. 350,) it is said by lord chief justice Wilmot, that " all writers upon our law agree *in this : no polluted hand shall touch the pure fountains of justice." I should lay hold upon this principle, if there was no other, for the purpose of chastising vice and impudence, on the one hand, and protecting virtue and innocence, on the other. When the defendant is told that every right, when witheld, shall have its remedy, and every injury its proper redress, and that personal security, which includes reputation, is one of his absolute rights, and then told he must live in a brothel, against his will, or, at least, pay rent for it, he cannot but see the disparity between the text and the comment, and if the one is right, the other must be wrong.

Evidence admissible under the plea.

If the evidence offered does not technically prove an eviction, yet, as there is no other plea under which the defence can be made, for the sake of giving effect to it, I should resort not to the statute law, nor to the common law, but to the great principles of morality, on which both are founded ; and if, in the long tract of ages which are past, I could find no case parallel with the present, I should decide against the plaintiff, satisfied that if the same case had ever existed, the principal actor in it had not aspired to immortality by publishing his own infamy.

Plea.

GOLDEN, Senator. The plea is, that before any part of the rent claimed became due, the lessor entered upon his lessee, evicted him, and kept him out of possession during the residue of the term.

Evidence offered.

Upon the trial, the tenant offered to prove that about the month of February, 1820, to the 1st day of which month the rent had been paid, the lessor from time to time introduced and kept in the house of which the demised premises were a part, lewd women and men for the purpose of prostitution ; that the lessee was disturbed by the noise,

indecent and riotous conduct of the lessor and those he so <span>ALBANY,<br>Dec. 1826.</span>
introduced; that these practices rendered the house in-
famous, so that it was disreputable to be one of its inhabi-            <span>Dyett<br>v.<br>Pendleton.</span>
tants; and that in consequence, the lessee felt himself com-
pelled to leave the premises, and did leave them about the
1st of March, 1820, after which he did not return.

*It is to be remarked, that the letting was from the 1st Demise.
of November, 1818, to the 1st of November, 1820; at
least the terms of the lease did not compel the lessee to
keep the premises longer than to the last mentioned date.
The rents had been paid to the 1st of February, 1820, so
that the controversy is as to the three ensuing quarters of
that year.

The proof offered, related only to the month of February, <span>Rent in con-<br>troversy.</span>
or from time to time and at sundry times, in and about that
month.   There was no further offer to prove how long the
evil practices had continued.   Indeed, as it was stated that
it would be shown that the lessee left the premises on the
1st of March, the offer must be considered as referring to
sundry times in the month of February.   There was no
offer to prove that the lessee would have been interrupted
in the enjoyment of the premises during the residue of the
term.

It is conceded, on all hands, that to excuse the non-per-
formance of a covenant to pay rent, an entry of the lessor,
and an eviction of the lessee must be pleaded.   But the
plaintiff in error contends that the evidence he offered,
should have been received as proof of an entry and evic-
tion.   This doctrine appears to be entirely new, and no
case was cited to show that it was not so.   Indeed, the
counsel of the plaintiff in error seemed to appeal to the
moral, rather than the municipal law.   And if we were to
decide this case according to the dictates of morality, we
might be disposed to pronounce a judgment in his favor.
It is true that the moral law and the law of the land should
not be at variance; but if they be so, it is not for us, in
our judicial capacity, to reconcile them.   We are, in ren-
dering our judgments, not to determine as we may think the
law of our country should be, but as we find it established;

ALBANY,
Dec. 1826.

Dyett
v.
Pendleton.

The evidence
could not bar
the action.

[*740]

and the question now presented for our decision is, whether a lessee finding himself temporarily disturbed in the enjoyment of the demised premises by the misconduct or. immoral practices of the lessor, may abandon the tenement for the whole term, and be exonerated from the payment of rent. If this question were to be answered in the affirmative, it would, in my opinion, introduce a new and very extensive chapter in the law of landlord and tenant; for if the encouragement or practice of lewdness *on premises under the same roof with the tenements leased, would warrant an abdication by the tenant, and release him from his covenant to pay rent, there is no reason why, if the landlord should by any other means render the occupation of the premises inconvenient or uncomfortable, the same consequences should not ensue. It would be so if the landlord were to maintain a house of ill fame adjoining or opposite to, or in the same street with the demised premises; if he were to set up a noisy or noxious manufactory near the tenements he had let; or if the landlord should happen to have the plague of a scolding wife under the same roof with his tenant, the tenant might feel himself authorized to leave the premises, and claim an exoneration from the payment of rent.

A decision that matters of this nature may be put in issue in an action of covenant for the non-payment of rent, would be to afford grounds for litigation on which there would be perpetual contentions. If the lessor illegally interferes with his lessee's enjoyment of the demised premises, otherwise than by an entry and eviction, the tenant has his remedy by civil suit or public prosecution; and this is the answer to the cases put by the counsel for the plaintiff in error, which were supposed to be analogous, and in which it was assumed the tenant could not be compelled to pay rent. If a landlord were to build up a wall so as to obstruct the access to the demised premises, it would be a private nuisance which the tenant might abate, or for which he might have his action. If a lessor were to cut away the stairs leading to apartments which he had demised, possibly this might be considered as an entry and

eviction; for a passage to apartments, must be considered as appurtenant to them, and therefore might be regarded as impliedly, if not expressly part of the thing demised. If not, the tenant might have his remedy by action. But merely because the tenant is interrupted or incommoded in the enjoyment of the demised premises, I am convinced the law does not allow him to redress himself by abandoning the tenement and withholding the rent.

But supposing the matters which the defendant below offered to prove might be a bar to the recovery of the rent, is *it possible that they ought to have been admitted as evidence under the plea on the record? This is, that on the 1st day of March, 1820, the plaintiff below entered in and upon the demised premises, ejected, expelled, put out, and amoved the defendant from the possession thereof, and continued him so ejected, expelled, put out and amoved, from thence to the time of his plea.

Now, under this plea, the defendant would have given in evidence that he left the premises of his own accord, and remained out voluntarily, because the plaintiff had rendered it disreputable, as the defendant thought, to inhabit them.

Were the evidence to be admitted under this plea, it would be carrying legal fiction farther, I believe, than it ever has been carried, and farther than is consistent with any notions of justice.

The plaintiff finding that the allegation of the defendant, in answer to the demand for rent, was, that he had been turned out of possession, and kept out by the plaintiff himself, might have gone to trial without testimony, resting on his knowledge that no such facts existed, or with witnesses to prove that the allegations were entirely untrue. But when the cause is opened, he learns, for the first time, that the allegation that he turned the defendant out of possession was a mere fiction, and that he has to defend himself against the charge of having kept a bawdy-house? If the plaintiff had been apprised that this was the fact on which the defendant relied, are we to intend that he could

ALBANY,
Dec. 1826.

Dyett
v.
Pendleton.

But if a bar, it was inadmissible under the plea.
[*741]

ALBANY,
Dec. 1826.

Dyett
v.
Pendleton.

[*742]

Notice
set off.

have brought no testimony to contradict the allegations of the defendant ?

If the facts alleged by the defendant would form a defence to the action, it is not possible that the rules of pleading are so absurd as to exclude the defendant from putting them on the record in the form of a plea. It cannot be that the science of special pleading holds a party to allege that his adversary entered on premises, drove him off, and kept him out, when he means to prove no such fact; but, on the contrary, that he left the premises voluntarily, and abandoned them of his own free will, because the plaintiff had offended him by permitting and participating in immoral practices in apartments *under the same roof with the demised premises. There are fictions of law sanctioned by great antiquity, which we are obliged to maintain, though they are such a violation of truth and common sense as to subject legal science to contempt and odium. I think we should add to the number of these, if we were to countenance so violent a fiction as that on which the defendant relies.

But the defendant alleges, and alleges truly, in my opinion, that no other plea than an entry and eviction will be a good bar in an action of covenant for the payment of rent. It seems to me that this is the strongest evidence of the correctness of the opinion of the supreme court, which they so strongly fortify by the cases to which they have referred, that an actual entry and eviction must not only be pleaded, but proved.

Suppose, however, that there is a difficulty in putting the matter which the defendant intended to give in evidence, in the form of a plea; yet there was nothing, certainly, to hinder his pleading the general issue, and, under that plea, giving notice according to the statute of the matter of defence on which he intended to rely; and then, if the matter could have been pleaded in any form, it would, on being proved, have been a bar to the action. But instead of doing this, as if further to mislead the plaintiff, he has subjoined to his plea a notice that he would give in evidence that the plaintiff was indebted to him for money

lent and advanced, &c. I think the judgment of the supreme court is as much in accordance with perfectly well established principles of law, as it is with the plain dictates of common sense. I am, therefore for affirming it.

ALLEN, Senator. The defendant in the court below pleaded specially, entry and eviction by the plaintiff. This plea was given by the common law, on the ground that the land demised had not been enjoyed by the tenant during the time included in the contract; and when he was deprived of the use of the land, the obligation to pay the rent ceased. (Bac. Abr. tit. Rent, L.) It contains three material allegations: entry, eviction, and keeping out of possession by the plaintiff; *and that they are essential parts of the plea, is evident from all the authorities.

In a note to *Salmon* v. *Smith*, (1 Saund. 204, note 2,) serjeant Williams says, the plea would not have been good, without stating expulsion and keeping out of possession, in connexion with entry; and he cites several authorities to support him.

What did the defendant offer to prove in support of this plea? Not an entry, certainly; for the plaintiff went into that part of the house only which had not been demised, and where he had a right to go. But an entry, as I understand it, is the going on to the demised premises, for the purpose of ousting the tenant. Was there an eviction, in the sense of the plea? Eviction, as I understand it, is a tortious act; it is putting the tenant out of possession by force. Entry and eviction, under the plea, mean the same thing as disseisin, when applied to the tenant of the freehold: which must be by entry and actual dispossession of the freehold; as if a man enters either by force or fraud into the house of another, and turns out, or at least, keeps him or his servants out of possession. (3 Bl. Com. 170.) It is an act which is directly and immediately injurious to the tenant, and for which trespass would lie; and not merely a consequential injury, which would be the ground of an action on the case.

The defendant offered to prove, in substance, that the

*Margin notes:*

ALBANY, Dec. 1826.

Dyett v. Pendleton.

Plea.

[*743]

Proof offered would not show an eviction in the sense of the plea.

Evidence.

ALBANY,
Dec. 1826.
—————
Dyett
v.
Pendleton.

plaintiff had introduced into other parts of the house adjacent to the demised premises, prostitutes and lewd women, for the purposes of prostitution; that he with other men introduced by him, kept company with them; that prostitution, noise and riot were carried on from time to time, and obscene and vulgar language used, so that the defendant's family and the neighbors were greatly disturbed, and odium and infamy thereby brought upon the house, as a place of ill fame; and that the defendant was compelled, by the repetition of these practices, to leave the premises, and did, for that cause, leave them. This conduct on the part of the plaintiff, bad as it was, did not, in any view, amount to a trespass; which, it appears to me, is included in every entry and eviction. The injury sustained by the defendant, the loss of possession, was not, as I have observed, direct and immediate, but consequential, and such as would support an action on the case for damages.

[*744]

Many other acts of the landlord might be supposed, which would produce the same consequential injury to the tenant, and make it not only inconvenient but almost impossible for him to inhabit the premises; but they would, by no construction, amount to an eviction in the sense of the law; they would rather be a disturbance of the possession. In *Waldron* v. *M'Carty*, (3 John. Rep. 471,) the action was on the covenant for quiet enjoyment, in a deed; and the question was, whether there was an eviction or a disturbance of the possession. *Spencer*, J. in giving the opinion of the court, makes an evident distinction between an entry and expulsion from the possession, and an actual disturbance in the possession; and the same distinction appears in *Korts* v. *Carpenter*, (5 John. Rep. 120.)

*Waldron* v.
*M'Carthy*, 3
John. R. 471.

*Korts* v. *Carpenter*, 5 John.
R. 120.

The cases cited on the argument are either upon the question of pleading, or merely determine that entry and eviction are an extinguishment of rent. None of them directly bring up the question of what is, or is not an eviction.

*Hunt* v. *Cope*,
Cowp. 242.

It is true, that in *Hunt* v. *Cope*, (Cowp. 242,) lord Mansfield observed, that if the defendant had pleaded eviction, the facts might have been sufficient for the jury to have

found a verdict in his favor. The plea was entry upon the demised premises, and breaking and pulling down the roof, and erecting a summer house, and tearing up the benches. The entry in fact, and demolishing a building so far that it could no longer be used by the tenant, might be evidence of an eviction from that part of the premises. In *Smith* v. *Raleigh*, (3 Camp. 513,) the plaintiff railed off or enclosed a part of the garden, and built a privy upon it; and lord Ellenborough ruled that this was an eviction from that part of the demised premises. But in the cause now under consideration, the inquiry is rather into the definition of an eviction, the meaning of which seems too obvious even to have been questioned in any of the cases. It was contended on the argument, that the facts offered in proof by the defendant should have been left to the jury as evidence for them to determine *whether they amounted to an eviction or not. What was this but calling on the jury to determine the law, by giving a construction to legal terms? A state of facts being given and admitted, the judge determines whether, in construction of law, they amount to the legal injury set up. The plea also alleges that the plaintiff, after the eviction, kept and continued the defendant out of the possession from thence hitherto; but the evidence offered was, that the defendant, after leaving the premises did not return. Eight months of the term of two years, the time for which the premises were demised, were unexpired when he went away. No evidence was offered of the continuance of the indecent and immoral practices after that time. The inference then is, that the plaintiff kept him out of possession for the remainder of the time, by the infamy and odium drawn upon the house before he left it. To permit such a conclusion to establish this part of the plea, would be going still greater lengths. I am of opinion the judgment of the supreme court should be affirmed.

EARLL, LIVINGSTON, SMITH and WOOSTER, Senators, concurred.

<div style="margin">ALBANY,
Dec. 1826.

Dyett
v.
Pendleton.

*Smith* v *Raleigh*, 3 Camp 512.

[*745]

For reversal 16.</div>

But a majority were for reversal.

Whereupon

It was ordered, that the judgment of the supreme court be reversed; and that a *venire de novo* should issue in the court below.

