### WILLIAM H. VANDERBILT v. DUDLEY PERSSE.

Where, in an action for use and occupation, it appeared that the premises were hired by an agent, who signed a lease under seal, and the tenant afterwards occupied the premises and paid the rent for one quarter in accordance with the terms of the lease; *held*, that the plaintiff was entitled to recover the same rent for a subsequent quarter, although the agent's authority was by parol and did not extend to the execution of a sealed instrument.

The courts in this state have been disposed to restrict, rather than extend, the rule laid down in the case of *Dyett* v. *Pendleton* (8 Cowen, 727), in respect to what circumstances may constitute the eviction of a tenant or relieve him from his obligation to pay rent.

Where a landlord, at the request of an agent of a tenant of lands, delivered some loads of hay upon the premises, and the tenant, upon a bill therefor being presented to him, remarked that there was more than he should want, but that he would see about it; it was *held*, that the proof the agent's authority to give the order being defective, the tenant should not be charged with so much of the hay as was left by him upon the premises at the termination of the tenancy.

THE defendant, being in Europe, wrote early in the spring to his friend, one Benedict, in New York, requesting him to hire a place in the country, for the defendant's use during the summer. With no further or more formal authority, the friend signed the defendant's name—adding, " By S. B. Benedict," to

a sealed lease from the plaintiff of a residence on Staten Island, for six months, from the first of May, at the rent of $750 for the term, payable in equal instalments on the first days of August and November.

Upon his arrival from Europe, the defendant entered into the occupation of the premises, and made the first payment of the rent prescribed by the lease, on about the first of August. On the 15th of that month, he closed the house and removed.

On the 8th of October following, the plaintiff, with the defendant's consent, entered upon the premises and afterwards brought this action in the Marine Court, to recover rent at the rate provided in the lease for the use of the premises from the 1st of August to the 8th of October. He also included in his complaint, a sum alleged due in account for hay, oats, and other articles alleged to have been purchased from him by the defendant.

The defence insisted upon was, that the lease being a sealed instrument, was executed without sufficient authority; that the defendant was evicted, and discharged from obligation for the rent demanded, by the condition in which the premises had been suffered to remain, as more particularly indicated in the opinion; and that the sum claimed in account was over-charged.

The evidence was conflicting as to the defendant's authority to the plaintiff to deliver the hay in question. Upon the presentation of a bill therefor, the defendant said that there was more than he should want, but that he would see about it. A portion of the hay was left by the defendant upon the premises when he left them.

The cause was tried by a jury. A verdict was rendered for the rent and balance of account, without deduction for the hay thus remaining. From a judgment awarded upon the verdict, the defendant appealed.

*Robert Gillen*, for the defendant.

*N. B. La Bau*, for the plaintiff.

BY THE COURT. INGRAHAM, FIRST J.—Whatever doubt might have existed as to the extent of the authority of Benedict to hire the premises, is removed by the fact that the defendant ratified the contract so made by him by taking possession of and occupying the premises of the plaintiff, and paying the first quarter's rent in pursuance of the contract. After so ratifying the act of his agent, it is too late for the defendant now to deny his authority.

I do not mean to say that if the action had been founded on the sealed instrument executed in the name of Persse by Benedict, that proper authority to execute a sealed instrument would not be necessary, nor that if such authority was not shown, a subsequent acknowledgment by parol would be sufficient to make it valid. (12 Wend. 525.)

But where the action is for use and occupation, and the defendant in pursuance of any contract made by an agent enters into possession of premises so hired, he so far ratifies the contract as to make himself liable for such use.

In fact there is ample evidence from which a hiring may be inferred, independent of the lease, in the fact of occupancy and paying the first quarter's rent. Continuance in possession warrants the presumption that the contract is continued on the same terms until it is shown to have terminated.

There was nothing in the offers to show the house to be untenantable, that could properly be admitted in evidence. A bad smell in the pantry, the kitchen being too hot with the stove in it, bad smells from the front window, a stagnant pond of water near the place, bad smell from fish, vermin in the bed rooms, were all matters that might have given some trouble to eradicate, but none of them can be held sufficient to relieve the tenant of his liability, or to come within the rule that defines an eviction. No case in this state has ever extended the rule of Dyett and Pendleton (8 Cow. 727), but in several the propriety of that rule has been doubted. The moral reasons attaching to that case would tend very much to lead courts to adopt that case as law, and in this state it has become the law of the land. But its principle has not been extended any fur-

ther, and on repeated occasions the determination of the courts has been expressed against sanctioning the doctrine of that case as applicable to such alleged causes as were offered in evidence on this trial.

Whatever may be the views of the English courts as expressed in some late cases, I think it is settled in this state that such causes as those suggested on the trial of this cause are not sufficient to show an eviction of the tenant. (*Westlake* v. *De Graw*, 25 Wend. 669.)

The hay was left without any authority on the part of Benedict to order it; and the evidence as to the weight and delivery of all of it is rather slight and uncertain. There was some evidence, however, both as to the use of it and delivery of the bill, without any objection to the amount of loads said to be delivered, and in that respect I think the verdict of the jury cannot be disturbed.

At the time, however, of presenting the bill, although the defendant did not object to the number of loads delivered, he remarked that there was more than he should want, but that he would see about it. Although such a remark might be sufficient to warrant the conclusion that he ratified the purchase of what he did want, it would not be sufficient to hold him responsible for the residue; and when it is shown that he left on the premises, when possession thereof was taken by the plaintiff, two loads of hay, amounting in value to $27 97, such amount should be deducted from the recovery. If the defendant's answer is to be considered as a ratification of the permission given by Benedict to the plaintiff to send some hay on the premises, it ought not to be considered as binding him to pay for more than was wanted for use; and when the plaintiff afterwards took possession of what remained unconsumed, it was but returning to him property left on the premises by the defendant, which he had not agreed to take from the plaintiff. The oats, potatoes, etc., included in the account rendered, did not in price amount to enough to equal the payment made. There was no evidence of payment except the admission in the bill which the plaintiff produced, and he had a right to apply

that payment to the other articles, leaving proof of the hay sold sufficient to cover the balance of the account.

I see no error on the part of the jury except in not crediting the defendant with the value of the hay left, $27 97. This amount, with interest from October 8, 1853, should be deducted from the judgment, and the same affirmed for the balance.

Ordered accordingly.