ISAAC S. EDWARDS, APPELLANT, *v.* ABRAHAM D. CANDY, RESPONDENT.

*Eviction — what acts do not constitute — when waived by taking new lease.*

Defendant leased certain premises to the plaintiff in March, 1874, for one or five years, at the option of the plaintiff. During the year 1874 defendant committed a number of acts which the plaintiff claimed constituted an eviction, and to recover damages for which this action was brought. At the expiration of the year, plaintiff decided to continue the lease for four years more. *Held,* that such election was equivalent to taking a new lease, and as plaintiff had not been expelled from or abandoned the premises, it was a conclusive defense to an action for damages sustained because of the alleged eviction during the previous year.

*Semble,* that an eviction cannot take place without an actual expulsion from or an abandonment of the demised premises. What acts constitute a constructive eviction, considered.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

This action was brought by the plaintiff to recover damages alleged to have been sustained by his being evicted from certain premises leased to him by the defendant.

The defendant on March 2d, 1874, leased to the plaintiff a farm and summer boarding-house, at East Hampton, for one year or five, at the option of the plaintiff. The plaintiff entered into possession, and at the end of the year elected to continue the lease for four years more. On November 6th, 1875, plaintiff abandoned the premises, alleging that he was compelled to do so in consequence of the bad and injurious conduct of the defendant.

The defendant denied any eviction, and set up a counter-claim. The acts (most of which were committed in the year 1874), which the plaintiff set forth in the complaint as constituting an eviction were, that the defendant " disturbed them (the boarders) by brutal conduct in his parlor by ringing the bell on the Sabbath; by ordering the plaintiff's company off the premises. Got into a passion, and threw the carving-knife while eating with the company. Disturbed the company by thumping on the house before

the bell was rung in the morning. Often made indecent exposures of his person to the inmates of the house. Often sat in the privy with his clothes down and the door open. Went about the house with the front of his pants down, declaring he would do what he liked. Frequently slandered the plaintiff to his guests. Told persons who came there to look at rooms, that he did not want them to stop there, for the plaintiff was not fit to keep boarders. He told a gentleman that if he came or sent any one there to board, he would be done with him forever. Declared to the plaintiff that he would do all he could to injure him. Also forbid the plaintiff's laborer to repair the fence, and ordered him off. Cut boughs from the trees near the milk-house; interfered with the washer-woman; abused the wife of the plaintiff, and threatened violence toward her with his cane. Refused to furnish anything for repairs on the farm, or to replace anything worn out in the house. Refused to let the plaintiff use his light spring-wagon, and plaintiff was obliged to use his own wagon, by means of which wrongs and injuries the plaintiff was obliged to leave and did leave the premises on the 6th day of November, 1875, and suffered great loss and damage during the time he was there."

*Miller & Tuthill*, for the appellant.

*J. Lawrence Smith*, for the respondent.

GILBERT, J.:

It would be a great stretch of the doctrine of constructive eviction to give that effect to the acts committed by the defendant. We are inclined to hold that such an effect ought not to be given to them. (*Hunt* v. *Cope*, Cowp., 242; *Allen* v. *Pell*, 4 Wend., 505; *Ogilvie* v. *Hull*, 5 Hill, 52.) Later cases have extended the rule as laid down in those cited. (*Dyett* v. *Pendleton*, 8 Cow., 727; *Cohen* v. *Dupont*, 1 Sand., 260; *Edgerton* v. *Page*, 20 N. Y., 281; *Myers* v. *Burns*, 35 id., 272.) But a substantial deprivation of the beneficial use of the demised premises, or a part thereof, is, according to all the cases, essential to constitute an eviction. Injuries to the tenant, which do not effect

his enjoyment of the premises, it would seem, are not sufficient for that purpose. But it is unnecessary to pass definitely upon this question. For the lease to the plaintiff was made in March, 1874, and was for one or five years, at the option of the plaintiff. Most of the acts of the defendant, of which the plaintiff complains, were committed in the year 1874. The plaintiff remained in possession during the whole of that year, and shortly before the expiration thereof elected that the term should be extended four years. Such election was equivalent to the taking of a new lease for four years. The plaintiff having remained in possession during the whole of the term, antecedent to the exercise of his option, there was no eviction, actual or constructive, during that period. It is impossible that an eviction should have occurred without an actual expulsion from, or an abandonment of the demised premises. (*Edgerton* v. *Page, supra*.) The fact, therefore, that the plaintiff remained in possession throughout the year 1874, is a conclusive defense to any claim for damages which he sustained in that year.

It appears that the demised premises had been long used by the defendant as a boarding-house, and that the plaintiff hired them for the same purpose. The plaintiff claims that the defendant dissuaded persons from coming there to board by remarks made in 1875, which were disparaging to the plaintiff, and that in consequence his profits were diminished. Assuming this claim to be well founded, we think the defendant's conduct did not amount to an eviction. The evidence fails to convince us that the plaintiff abandoned the premises in consequence thereof. On the contrary, he remained in possession until November, 1875, when the season for boarding had ended, and we are satisfied that he quit the premises because his business had turned out to be unprofitable. How much, if any part, of that result is attributable to the defendant, and how much to the plaintiff, it is impossible to tell. The other improper acts imputed to the defendant, which occurred in 1875, seem not to have been relied upon on the argument, and were too trivial to form the basis of a cause of action. Upon the whole, we think that the plaintiff failed to establish any right of action. The counter-claim was satisfactorily established to the extent allowed by the referee. As the plaintiff has made no point

on that subject, a discussion of it is unnecessary. The judgment must be affirmed, with costs.

BARNARD, P. J., concurred.

Present—BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment affirmed, with costs.