## McNUTT *v.* SHAFER.

*(Supreme Court, General Term, Third Department.* November 26, 1890.)

LANDLORD AND TENANT—EVICTION.

A lease of a farm reserved to the lessor a large part of the house, an acre of land, the privilege of erecting a hen-house, and stable room for a horse. In an action for rent there was evidence that before erecting a hen-house, the lessor put in a door and window in an open shed on the farm and kept his hens there, locking them in at night to prevent stealing; that he kept all the stalls in the stables, except the one in which his horse stood, filled with bedding; and that he occupied all the bays in the barn for storage purposes. There was nothing to show any objections on the part of the lessee. *Held,* that a direction to the jury to find for plaintiff was warranted. MAYHAM, J., dissents.

Appeal from Albany county court.

Action by James McNutt against William Shafer, originally commenced in the city court of Albany, to recover one quarter's rent of a farm. On appeal to the county court, a verdict was directed for plaintiff for the full amount claimed, and defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Eugene Burlingame,* for appellant. *William F. Beutler,* for respondent.

LEARNED, P. J. The general rule of law as to the effect of an eviction, total or partial, by the landlord is undisputed. The question here is whether there can be said to have been a partial eviction, that is, an eviction of the shed attached to the barn, or of any other part of the leased premises. We must bear in mind that the lessor reserved from the lease a large part of the house, an acre of land, the privilege of removing his hen-house, stable room for a horse, and some other matters. So that it is evident that both lessor and lessee were to live on the leased farm, and that the lessor was to be allowed to use certain parts of it. Under these circumstances, it would not be strange if the two parties should occasionally infringe, one upon the other, in using their respective parts and privileges. Acts might be done by the lessor which were beyond the rights he had reserved. But if those acts were done without any objection by the lessee they ought not to constitute an eviction. In regard to the shed it seems that plaintiff put in front doors, and windows, and kept his hens there till, as a witness says, "late this fall." Then he built a new hen-house in the orchard, and took his hens there, according to the privilege of the lease. It does not appear that the defendant objected. A tenant of defendant's asked for this place, and plaintiff refused it until he had built his new hen-house about the latter part of October. But it does not seem that the defendant interfered or objected to the use which plaintiff made of the shed. It is said that plaintiff put a lock on the door. But he explains that that was to prevent the stealing of his chickens at night. The learned judge offered to submit the question to the jury how much deduction there should be for these trespasses on defendant's rights, but the defendant declined this, claiming that there was an eviction, or at least claiming to go to the jury on the question of eviction as a full defense to the action. And while the general rule above referred to may apply where there is a lease with reservation of certain parts of the premises and privileges therein to the lessor, still more distinct and clear proof of such eviction should be made in that case. For, as above suggested, the right of the lessor to go on the premises, to have possession of part, and to enjoy privileges over other parts may easily go beyond its strict bounds, without any intent to deprive the lessee of what belongs to him. In this view it seems to me that the holding of the learned judge should be sustained, and the judgment affirmed, with costs.

MAYHAM, J. This action was upon the covenants in a written lease under seal, for the recovery of an alleged balance due plaintiff on rent. The lease

was for 10 years, of a farm from April 1, 1888, and contained reservations to the lessor, of the first story, and all except three rooms of the second story, of the main building of the dwelling-house, also about one acre of land in the rear of the hen-house, with privilege of moving the hen-house to the orchard; also stable room for one horse. The lessee covenanted to pay $450 rent per annum, in equal quarterly payments. The claim in the complaint was for one quarter's rent, alleged to be due September 30, 1889. The answer alleged denial, payment, breach of contract of letting, eviction, offset, counter-claim for trespass, and for use and occupation, and demanded an affirmative judgment for defendant.

The proof showed that one quarter's rent was in arrears at the time of the commencement of the action. The evidence of the defendant tended to show that the plaintiff had kept all the stalls in the horse stable, except the one in which his horse stood, filled with leaves used for bedding for his horse; that he had the bay in the barn filled with his hay, and occupied by him in that manner since the commencement of the lease, to the exclusion of the defendant; and also some portion of the time the other bays in the barn had been occupied by the plaintiff as a drying place for grain and screening which he procured at the malt-house, and used for feed, and also the barn floor for the storage of provisions, tools, and farming utensils, to such an extent as to prevent or obstruct the defendant's free use of the same. The proof also showed that the plaintiff since the defendant's occupance under this lease has closed up a shed adjoining the barn formerly used by defendant for sheltering his stock, put in windows, and a door, and has kept the door locked, using the same as a hen-house, and shelter for his horse. Other trifling instances of occupancy and interference with the premises by the plaintiff were also proved by the defendant. The defendant insisted at the trial that these acts of the plaintiff constitute an eviction, and bar the plaintiff's right to recover rent, and upon that ground moved for a dismissal of the complaint. The court denied the motion, and the defendant declining to give any evidence upon the question of damage for the alleged interference with his rights under the lease, the court directed a verdict for the plaintiff for the amount of the rent.

The rule that a wrongful eviction of the tenant by the landlord of the whole or a part of the demised premises, suspends the right of the lessor to recover rents during the continuation of that eviction seems too well settled in this state to admit of discussion. But in order to relieve the tenant from the payment of rent, under the covenants in the lease, there must be an actual physical conviction, either in whole or in part, from the demised premises. A trespass upon the premises by the lessor, not resulting in an actual exclusion of the lessee from the premises, or any part of the same, will not have the effect of suspending the entire rent, while it may give a right of action to the lessee for the injury sustained by him.

In *Dyett* v. *Pendleton*, 8 Cow. 730, SPENCER, Senator, in his opinion in the court of errors, lays down the general rule governing this class of actions as between landlord and tenant, which was concurred in by the chancellor, and has been uniformly followed since, as follows: "If the land demised be recovered by a third person by superior title, the tenant is discharged from the payment of rent after eviction by such recovery. (2) If a part only of the lands be recovered by a third person, such eviction is a discharge only of such rent as is in proportion to the value of the land evicted. (3) If the lessor expel the tenant from the premises, the rent ceases. (4) If the lessor expel the tenant from a part only of the premises, the tenant is discharged from the payment of the whole rent, and the reason for the rule why there shall be no apportionment of rent is that in this case, as well as in that of eviction by a stranger, is that it is the wrongful act of the lessor himself, 'that no man may be encouraged to injure or disturb his tenant in his posses-

sion, who, by the policy of the feudal law, he ought to protect and defend.'"
It is true that in this case there was an abandonment by the tenant of the
entire premises by reason of the maintenance by the landlord of a nuisance
which rendered the occupation of the premises by the defendant improper.

In *Lawrence* v. *French*, 25 Wend. 445, NELSON, C. J., says: "It is a fa-
miliar rule that if the landlord enter wrongfully upon or prevent the tenant
from the enjoyment of a part of the demised premises, it suspends the whole
rent until possession is restored."

In *Christopher* v. *Austin*, 11 N. Y. 218, PARKER, J., in delivering the
unanimous opinion of the court of appeals, says: "The rule is that if a land-
lord enter wrongfully upon or prevent the tenant from the enjoyment of a
part of the demised premises, the whole rent is suspended until possession is
restored."

In *Carter* v. *Byron*, 1 N. Y. Supp. 905, the court hold that when a part of
the demised premises are wrongfully taken possession of by the lessor, with-
out the permission of the tenant, the whole rent is suspended until the pos-
session is restored. These cases are not in conflict with *Ogilvie* v. *Hull*, 5
Hill, 52; *Lounsbery* v. *Snyder*, 31 N. Y. 514; *Campbell* v. *Shields*, 11 How.
Pr. 565; or *Boreel* v. *Lawton*, 90 N. Y. 293, cited by the plaintiff.

In *Ogilvie* v. *Hull*, the landlord posted notices on the premises that they
were for rent, and offered to let them before the expiration of the tenant's
term. Held no eviction, because there was no act by the landlord, or any
one under him, interfering with the use or occupation of the premises.

In *Campbell* v. *Shields*, 11 How. Pr., *supra*, the court held that if the land-
lord evicted the tenant in whole or in part, his right to rent was suspended;
but where there is a mere trespass by the landlord upon the demised premises
when he does not evict by taking possession or compel the tenant to leave
the premises by the creation of a nuisance, the tenant is left to his action, and
must continue to pay rent.

In *Lounsbery* v. *Snyder*, *supra*, the court held that a mere trespass by
the landlord, not interfering with the substantial enjoyment of the lessee, is
not equivalent to an eviction. To constitute an eviction of the tenant, there
must be an actual or constructive exclusion of the tenant from the possession
or beneficial enjoyment either of the whole or some part of the demised prem-
ises.

In *Boreel* v. *Lawton*, *supra*, the court holds that to constitute a breach of
covenant of quiet enjoyment an eviction must be actual or constructive, and
that there cannot be a constructive eviction without abandonment of posses-
sion.

From these authorities it would seem that the acts or omissions of the plain-
tiff in allowing his geese, fowls, and bees to remain upon the demised prem-
ises, or in not removing his hay, grain, or farming utensils therefrom, while
they might give the defendant a right of action for trespass or storage, would
not amount to an eviction so long as the defendant remained upon the prem-
ises, and such interference with the full and complete enjoyment by the de-
fendant of the demised premises would not constitute a bar to the right of
the plaintiff to recover rent. But the evidence discloses, and it is not denied,
but seems conceded, that the plaintiff took exclusive possession of the shed at-
tached to the barn, a building 26 by 13 feet, which the defendant was accus-
tomed to use as shelter for his teams, inclosed the same and locked the door,
thus taking exclusive possession, and necessarily excluding the defendant
from the same. This, unexplained, was a wrongful physical eviction of the
defendant from a portion of the demised premises. It does not appear from
the evidence what the use of this shed thus inclosed, and from which the
defendant was excluded, was worth, and the court is asked to assume that
it was so trivial in value as not to amount to a substantial eviction for
the plaintiff to take exclusive possession of it, and the plaintiff seeks to ap-

ply the maxim *"de minimis non curat lex,"* and in support of this contention we are referred to the case of *Lounsbery* v. *Snyder, supra.* But that case is clearly distinguishable from this in that there was in that case no actual interference with the tenant's enjoyment of the whole demised premises. I do not think, under the authorities, or in the due administration of justice between suitors under the law, the court would be permitted to speculate as to the extent of the injury to the tenant from an eviction, when an eviction has actually occurred. To do so would be to unsettle established rules of law, and encourage parties in the violation of their contracts, and thus open a field for a vast amount of uncertain and unprofitable litigation. With the question in the case as to whether or not the plaintiff has wrongfully evicted the defendant from any portion of the demised premises, we think the learned judge erred in directing a verdict. Judgment reversed, and a new trial ordered, costs to abide the event.