### BERGMAN v. PAPIA et al.

#### (Supreme Court, Appellate Term. April 10, 1908.)

1. LANDLORD AND TENANT—PARTIAL EVICTION—REFUSAL TO ALLOW REPAIRS.
   Where parts of premises became uninhabitable through the act of a stranger, by refusing to permit them to be restored to a habitable condition, the landlord partly evicted the tenants, as affecting their liability for rent.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, §§ 766, 770–774.]

2. SAME—LIABILITY FOR RENT.
   A tenant, evicted by his landlord from the whole or any portion of the demised premises, need not pay rent for the time during which the eviction continues.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 766.]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Summary proceedings by Henry Bergman against Guiseppe Papia and another. From a final order in the landlord's favor, the tenants appeal. Reversed, and new trial granted.

Argued before GILDERSLEEVE, P. J., and SEABURY and DAYTON, JJ.

Palmieri & Wechsler, for appellants.
Henry Bergman, for respondent.

SEABURY, J. The justice before whom this proceeding was tried made a final order dispossessing the tenants for the nonpayment of rent. The appellants were tenants, under a written lease, of the premises No. 521 East 145th street, borough of Manhattan, city of

New York. Apartments in the premises were leased to several under-tenants. The tenants claim to have established a defense of a partial actual eviction. The testimony showed that the New York City Railway Company maintained a barn for storing cars adjacent to the premises demised. The operation of the cars in the barn caused parts of the wall of the demised premises to crack, and the ceilings of some of the apartments to fall, and shook the building. The landlord was under no duty to repair the premises, and he refused to allow the railway company's representatives to enter the building for the purpose of making repairs at the request of the tenants. The condition of several of the apartments was uninhabitable, and, the tenants not being permitted to remedy this condition, the undertenants, who had occupied the third, fourth, and fifth floors of the building, moved out. There is no doubt, therefore, that the tenants were actually deprived of a substantial part of the demised premises.

While the injury to the premises was not caused primarily by the act of the landlord, yet the deprivation of the tenants of a substantial part of the demised premises was directly caused by the acts of the landlord in preventing the repair of the premises. The present case, therefore, is clearly distinguishable from that line of cases which hold that the acts of strangers do not relieve the tenants from the obligation to pay rent, even though they render the premises uninhabitable. Johnson v. Oppenheim, 34 N. Y. Super. Ct. 416, affirmed 55 N. Y. 280; 2 McAdam on Landlord & Tenant (3d. Ed.) § 415, and cases cited. In this case the injury to the premises would have been promptly repaired, except for the acts of the landlord. The uninhabitable condition of the premises continued, therefore, on account of the landlord's action, and he cannot be permitted to avoid responsibility for it. Refusing to permit the uninhabitable condition to be made habitable, the condition of the premises was the result of the landlord's act.

The court below found a smaller sum to be due for rent than the landlord claimed, under the terms of the lease; thus attempting to make the tenants an allowance for the injury to the premises. It is now well settled that a tenant, evicted by his landlord from the whole or any portion of the demised premises, need not pay rent for the time during which the eviction continues. When this rule was first recognized in this state, in Dyett v. Pendleton, 8 Cow. 731, it was said to rest upon the ground "that no man may be encouraged to injure or disturb his tenant in his possession, whom, by the policy of the feudal law, he ought to protect and defend." In Vermilya v. Austin, 2 E. D. Smith, 203, Judge Daly, after remarking that "if the rule had nothing else to support it but a maxim founded upon the feudal policy of tenures, it would be entitled, in this state, to little consideration," reviewed the earlier authorities from which the rule was derived, and showed that it rests upon the principle expressed by Chief Justice Hale, when he said:

"If the lessor enter into part by wrong, this shall suspend the whole rent; for in such a case he shall not so apportion his own wrong as to enforce the lessor to pay anything for the residue." ·

This reason for the rule is as applicable now as when it was first assigned. But, whatever its reason, there is no doubt about the rule.

Christopher v. Austin, 11 N. Y. 216; Carter v. Bryon, 49 Hun, 299, 1 N. Y. Supp. 905; Edgerton v. Page, 20 N. Y. 281; Buffalo Stone & Cement Co. v. Radsky, 14 N. Y. St. Rep. 82; Perniciaro v. Veniero (Sup.) 90 N. Y. Supp. 369; Hamilton v. Graybill, 19 Misc. Rep. 521, 43 N. Y. Supp. 1079; Seigel v. Neary, 38 Misc. Rep. 297, 77 N. Y. Supp. 854. It follows that the order appealed from should be reversed.

Final order reversed, and new trial granted, with costs to appellants to abide the event. All concur.