# SUPREME COURT.

## John Peck agt. Selah Hiler.

Where there was a grant of the use of a railroad in the form of a covenant, in a lease of premises (occupied as iron works) separate from, and after the formal demise of the premises,

*Held*, that construing the lease in its entirety, (which is the proper way to construe any instrument in writing,) it demised the premises described, and the use of the railroad—no part rested simply in covenant. The *habendum* included the premises previously described *with the appurtenances*, and what was said afterwards, as to the right to use the railroad, might be considered as a specification of one of such appurtenances. The use of the railroad being actually leased, *rent* was to be paid for it as an *appurtenance.*

It is no longer necessary that there should be a manual or physical expulsion or exclusion from the demised premises, or any part of them, to constitute an *eviction*. Any intentional and injurious interference, by the landlord, which deprives the tenant of the means, or the power of beneficial enjoyment of any part of the demised premises, is an eviction, under the authority of the cases in this state—*per* Emott, *Justice.*

In this case the landlord took up and removed the rails from the railroad, the use of which he had leased to the tenant, which was held to be an eviction of a portion of the demised premises, and suspended the rent of the whole.

*General Term, October, 1856.*

This action was brought for the recovery of the possession of certain premises in Rockland county, which were demised to the defendant by the plaintiff. The complaint avers that rent for more than half a year was due and unpaid; that payment was demanded and refused; and that plaintiff gave notice of his intention to re-enter within fifteen days, on account of the non-payment of such rent. The answer avers that the use of a certain railroad was demised as part of the demised premises; and that after the defendant had taken possession of the premises, the plaintiff evicted him from the use of the railroad, and still holds him evicted. The railroad was granted in the form of a covenant (of which there were a number) in the lease, and separately and subsequently to the formal demise of the premises, in these words: "The said party of the second part

is also to have the use of the railroad, in common with others, and to put the same in order above the chemical works, if he wishes to use it."

The cause was tried before Justice BROWN, without a jury, in November, 1854, who rendered judgment in favor of the plaintiff, and delivered the following opinion :—

IF we assume the use of the railroad is a part of the demised premises, the question still remains,—Did the act of the plaintiff, in tearing up and removing the rails, amount to an eviction ?

The result of all the authorities to which I have had access lead to this conclusion, that to constitute an eviction there must be an actual conversion and removal of the tenant from the demised premises, or some part thereof.   It need not be by an exertion of physical force ; but the tenant must, by some means or other, procured or brought about by the landlord, be ousted, and removed from the possession.

I have also looked into the entries, and old forms of pleadings—usually a very safe guide—and I find that in pleading an eviction the necessary allegation is, that the said, " with force and arms, &c., entered into and upon the said demised premises, and then and there ejected, expelled, put out, and removed the said ——— from the possession thereof, and kept and continued him, the said ejected and expelled, &c." *Sergeant Williams*, (than whom there is no better authority upon the substantial requisites of a good pleading,) in *note* 2, *1st Saund.* 204, says, the plea would not have been good without stating expulsion and keeping out of possession in connection with an entry. The tearing up and removal of the rails from the track of the railroad lacks two of the essential requisites of an eviction, to wit, the removal of the tenant from the possession, and the keeping him out of the possession after he was removed.   It was a tortious act for which the defendant had his remedy by action to recover the damages, but it was not an eviction of the defendant from the demised premises.

This being the only question for my determination, judgment

Peck agt. Hiler.

must be entered for the plaintiff, that he recover the possession of the premises mentioned in the complaint.

From this judgment the defendant appealed to the general term. The cause was argued in April, and was decided at the October term, when the judgment of the special term was reversed—(BROWN, *P. J.*, STRONG *and* EMOTT, *JJ.*)—and the following opinion was delivered by Justice EMOTT:—

By the court—EMOTT, Justice. This action is for the possession of certain demised premises, alleged by the plaintiff to have been forfeited by the non-payment of rent. The defence is, that the rent was suspended by the eviction of the tenant from a portion of the premises; and if this partial eviction be established, there is no doubt that the entire liability of the tenant for rent ceases, until the interference of the landlord with the use of the property is terminated. The alleged eviction in this case consisted in the tearing up and removal of the rails upon a railroad running to the Hudson river from the demised premises, which was a rolling mill and iron works in Rockland county.

The fact of the removal of the rails by the plaintiff is admitted; but two questions are raised—first, whether the use of the railroad was part of the demise; and, second, if it was, whether the tearing up of the rails constituted an eviction.

The use of this railroad is granted in the form of a covenant in the lease, and separately from the formal demise, it is true. But this does not exclude the enjoyment of this structure from forming a part of the demise. The instrument must be construed according to its true meaning, and not by strict technical rules; and it is sufficiently obvious that this interest in the railroad in question, or its use, was intended to be let and secured to the lessee during the term. It is granted in express, though perhaps not formal terms, to the tenant as part of his lease; and though perhaps if it be conceded as an incorporeal hereditament, a rent could not in strictness be said to issue out of it alone; yet, when such an interest is devised with lands, and a rent reserved, it is held to issue out of both in point of render,

although out of the corporeal hereditament alone in point of remedy : so that where a rent is nominally reserved out of two things, the one corporeal and the other incorporeal, and not apportioned, and the demise of the incorporeal hereditament is insufficient, or invalid in form or substance, no rent at all is recoverable. (*See* 2 *Saund.* 303 ; 2 *B. & A.* 336 ; 2 *A. & E.* 696 ; 7 *Exch.* 685.)

In the case of *Watts* agt. *Coffin*, (11 *J. R.* 495,) the court held that the covenant of the lessor, that the lessee should have common of estovers, and common of pasture in part of the Rensselaer manor, to which the demised premises belonged, did not make these privileges part of the grant, or of the demised premises, out of which rent was reserved, but that they lay in covenant. But this was founded upon two sufficient reasons peculiar to that case, and which do not exist here.

By the terms of the lease in *Watts* agt. *Coffin*, the rent was reserved expressly out of the lands granted, and was the yearly tenth of their produce, showing that these rights of common formed no portion of the premises out of which the rent was reserved to issue. And the court also advert to the fact, that the common mentioned in the covenant is appurtenant only, and capable of being created by grant as a separate interest or right, and not appendant to the estate created by the deed, which was a fee. Upon these arguments, applied to the construction of the conveyance, the court held that these rights of common formed no part of the grant.

In *Etheridge* agt. *Osborn*, (12 *Wend.* 529,) the lease contained a covenant, that the landlord would dig and complete a raceway across the demised lands, to contain a given quantity of water, which the tenant was to be allowed to use. The defence was, that the raceway had never been built, and thus the tenant had lost its benefits. The court held, that as the tenant went into possession without, and before the construction of this raceway, the landlord could not be said to have evicted the tenant from what had never existed, and the tenant must sue for damages on his covenant. But it was admitted, that if the landlord, after the raceway had been dug and water let in, had

diverted the water, it would have amounted to an eviction. The use of the race, and the water flowing in it, when made, was an essential part of the premises, and necessary to their full enjoyment.

In *Tomlinson* agt. *Day*, (2 *Brod. & Bing.* 680,) the landlord stipulated that the tenant of a certain farm leased at a rent of £450, should enjoy a right of sporting over a manor, and it appearing that the landlord had no right to grant the privilege of sporting, it was held, that the right to shoot game formed part of the demise, and entered into the consideration for which the tenant became bound to pay rent, and that the fact that no such right passed, and the tenant was warned off, constituted an eviction.

In this case the use of the railroad in question unquestionably formed part of the inducement and consideration for which the defendant agreed to pay the stipulated rent, and were necessary to the full enjoyment of the premises as leased. How far the tenant considered this use of the railway in the bargain, or how important it was to the full and profitable use of the property in the business for which it was intended, is not material. It is enough that the court can see that it formed part of the premises and privileges which the tenant was to occupy and enjoy, that it was part of the estate granted, and intimately connected with the use of the land and buildings.

The next question is, whether the facts shown and admitted constitute, in law, a partial eviction, assuming this railway to have been part of the demise. Here I am constrained to differ with the learned judge who tried the cause; while upon the principles upon which he places his decision, derived from the old precedents of pleading, it may be difficult to escape the force of his reasoning, yet these rules, and this construction of the pleas, have been expressly overruled and set aside by the more recent cases, and especially in the case of *Dyett* agt. *Pendleton*, in the court of errors, (8 *Cow.* 727.) It is no longer necessary that there should be a manual, or physical expulsion or exclusion from the premises, or any part of them, to constitute an eviction. Any intentional and injurious interference

by the landlord, which deprives the tenant of the means or the power of beneficial enjoyment of any part of the demised premises, is an eviction, under the authority of the cases in this state.

The opinion of Chief Justice NELSON, in *Ogilvie* agt. *Hull*, (5 *Hill*, 52,) which was cited to limit the application of the case of *Dyett* agt. *Pendleton*, expressly recognizes the principle. And in *Cohen* agt. *Dupont*, (1 *Sand. S. C. R.* 260,) the superior court of New-York laid down and applied the same rule. The considerations derived from the forms and rules of pleading, by the learned judge who delivered the opinion in this case, were adverted to in the court of errors in the case of *Dyett* agt. *Pendleton*, and were not admitted to be sufficient to control the decision of the question. These cases, and the reasoning they contain, are, I think, decisive to show that the removal of the ~ails was an eviction of a portion of the premises demised in his case. It is well settled that an eviction, as to part of the lemise, suspends the rent of the whole. (*See Lawrence* agt. *French*, 25 *Wend.* 443.) And therefore the defendant here was not at the time of the bringing this action under the obligation to pay the rent fixed by this lease, and it did not become forfeited by his failure.

The judgment should be reversed, and a new trial ordered—with costs to abide the event.

On the 14th of November, 1856, an order was made at general term, directing a re-argument to be had, and on such re-argument the following opinion of the court was delivered:—

FERRIS & FROST, *for plaintiff*.
STEVENS & HOXIE, *for defendant*.

By the court—S. B. STRONG, Justice. I assented to a re-argument of this case, as my associates had differed from each other, and from a supposition that I might have misinterpreted the authorities cited by Judge EMOTT in his opinion, to which I had yielded my first impressions. On a re-examination, I

have adhered to the opinion of a majority of the court, that the learned judge, before whom the action had been tried, had erred in rendering judgment for the plaintiff.

Taking the lease in its entirety, and that is the proper way to construe any instrument in writing, it demised the rolling mill, furnace and machinery, and the land under and immediately adjoining the mill, with the dwelling-house formerly occupied by the Rev. Dr. Willard, the use of certain wire blocks or spindles, pulleys, wheels and shafts, and the use of the railroad in common with others, including the lessor, the right to use and enjoy all such property passed to the defendant by the lease, and no part of it rested simply in covenant. The *habendum* included the premises previously described *with the appurtenances*, and what was said afterwards as to the right to use the railroad may be considered as a specification of one of such appurtenances. If it had not acquired that character before, it might well have been created by the lease. (*Co. Litt.* 121, *b;* 1 *Vent.* 40; *Com. Dig. title Appendant and Appurtenant, A.*)

It is true, the *habendum* clause could not enlarge the premises. (*Com. Digest, title Facts.*) But it may well refer to what is granted in any part of the conveyance. To say that it must refer exclusively to what preceded it, would, in cases like the present, be sacrificing substance to form. The stipulation for the payment of rent by the use of the word, therefore, shows that it was to be for all that had been described or referred to immediately before, both the premises and their appurtenances. It follows, then, that the use of the railroad was actually leased, and that rent was to be paid for it as an appurtenance. If so, what was said by Chief Justice SAVAGE, in *Etheridge* agt. *Osborn*, (12 *Wend.* 529,) is directly applicable. There the lessor had covenanted to construct a raceway, which the lessee was to have the privilege of using; but it was never made. It was decided that the use of the raceway had not been demised, for it had no existence when the lease was executed, nor, in fact, at any time. But it was remarked by the chief justice, that had the landlord, after the raceway was dug, and the water let in and enjoyed by the tenant, subsequently diverted the water

from the raceway, or a part of it, that, I think, would have amounted to an eviction within the cases of *Lewis* agt. *Payn*, (4 *Wend*. 423,) and *Dyett* agt. *Pendleton*, (8 *Cow*. 727,) which last case, in the court of errors, carried the doctrine of eviction to the utmost verge.

I have no difficulty in concurring in the opinion, that an interruption to the enjoyment of a privilege conferred by a lease, by physical means adopted by the landlord, constitutes an eviction. If so, such eviction clearly suspended the rent for the whole, and more especially any remedy by the landlord by reason of its non-payment.

It is no answer to this to say that the tenant has recovered, from the landlord, damages for the breach of the covenant for the use of the railway. If it would in any case, wherein the landlord would be liable for a penalty once incurred, it could not have that effect in the case of a continuing covenant. Here the tenant was to have the use of the railroad during the entire term. The landlord can only relieve himself, as to the future, by returning the rails which he has wrongfully removed.

The judgment at special term must be reversed, and there must be a new trial—costs to abide the event.

EMOTT, Justice. After attentively considering all which was cited and urged upon the re-argument of this cause, in favor of sustaining this judgment, I adhere to the opinion expressed by me on the first hearing, with some slight modifications and additions, which I have made to meet suggestions which were made on the re-argument. The opinion thus delivered states the reason for which, I think, there must be a new trial; and Mr. Justice BIRDSEYE concurs in the reasoning and conclusions of that opinion.

We are unanimous that the judgment should be reversed, and a new trial ordered.

NOTE.—This case illustrates, if it does not confirm, the doctrine of constructive eviction as to the whole premises, (without abandonment,) in suspension of the rent.

It appears that the portion of the premises upon which the alleged eviction

Catharine E. Corey, &c. agt. Mann.

took place, was a very small and comparatively unimportant part of the whole; and besides, it was a pretty nice question whether such portion passed by the lease, as part of the demised premises, or rested entirely in covenant. And Judge Brown rested his opinion upon the distinct ground, that "the tearing up and removal of the railroad lacked two essential requisites of an eviction, to wit, the removal of the tenant from the possession, and the keeping him out of the possession after he was removed."

On the reversal of this decision at the general term, Judge Emott says, " The doctrine, that any intentional and injurious interference by the landlord, which deprives the tenant of the means, or the power of beneficial enjoyment of any part of the demised premises, is an eviction, appears to be considered as settled by authority in this state."

The facts in this case appear to be that the defendant was not actually dispossessed of any portion of the premises; he must, therefore, have been evicted con structively.—[Reporter.]