### BARNUM *et al. v.* FITZ PATRICK.

*(Common Pleas of New York City and County, General Term. January 4, 1892.)*

1. LANDLORD AND TENANT—RENT—EVICTION BY LANDLORD.

While a tenant was in possession under a lease containing covenants on his part to repair, and to surrender in good condition, with further covenants that the landlord should not be called upon for any disbursements or outlay during the term, and that the tenant would comply with all the ordinances of the city and "all orders and requirements of the board of health," several orders from the board of health and building bureau of the city were served upon him, requiring repairs and changes to be made. Upon the tenant's failing to comply with these orders, the landlord, apparently with the tenant's permission, entered the premises, and made several repairs in the house, and also razed a stable to the ground, and left the materials in the yard. The tenant paid rent during a portion of the time these repairs were being made, and remained in possession of a portion of the premises, although he was notified by the landlord that he would not be held liable to comply with the orders of the two departments if he would surrender the possession. *Held*, that these acts of the landlord did not amount to an eviction, relieving the tenant from payment of a portion of the rent, as he was still in possession of a part of the premises, and there was no evidence that he had been finally excluded from the other part.

2. SAME—RECOVERY OF POSSESSION—SUMMARY PROCEEDINGS.

In summary proceedings to recover possession of demised premises for non-payment of rent, the only answer that can be made is a general denial, or a denial of the specific allegations of the petition; and, if any portion of the rent is shown to be due, the landlord is entitled to a final order in his favor.

Appeal from fifth district court.

Summary proceedings by Sarah A. Barnum and another against John Fitz Patrick to recover possession of demised premises known as "No. 320 Stanton Street," in the city of New York, for non-payment of rent. From a final order dismissing the petition, plaintiffs appeal. Reversed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*Hatch & Warren*, for appellants.   *Frank Moss*, for respondent.

BOOKSTAVER, J.   On the 1st day of December, 1889, respondent, Fitz Patrick, leased from the appellants the premises known as "320 Stanton Street," on the corner of Goerck, for a term of three years and four months from that date, at the rate of $70 per month, payable in advance. No rent was paid on July 1, 1891, and on the 9th of that month this proceeding was instituted. The tenant interposed an answer, denying that there was any rent due at that time, also denying that he was in possession of the premises after default in payment, and alleging that on or about the 22d May, 1891, the landlords entered the leased premises, and required him to move therefrom, tore up a portion of the premises, and demolished other portions. Subsequently, this answer was amended by setting forth that the acts of the landlords were wrongful, and without the permission of the tenant, and were done for the purpose of wrongfully withholding the possession of the premises from the tenant, and depriving him of the beneficial use and enjoyment of the same. Upon the trial the tenant admitted that the sum of $70 was due on the 1st July, 1891, under the terms of the lease; that a demand for the rent had been made, and not complied with; and that he had not surrendered possession of the property; and it was shown that he and his under-tenants were in actual possession of a part of the same when the proceedings were commenced, and at the time of the trial. It further appears from the evidence that, commencing with about the 1st February, 1891, and continuing for some time thereafter, several orders from the health department and from the building bureau were served upon the tenant, requiring repairs and changes to be made on the premises; but the nature and extent of such requirements does not appear, as the notices were not admitted in evidence. On April 23d, according to a letter put in evidence by the tenant, he was notified on behalf of the landlords that, if he would surrender the lease, they would not hold him liable to comply with the orders of the two departments; but that if by the 25th of that month he had not complied with the order of the bureau of buildings sent to him, and such other orders as had been served upon him, they would proceed to perform the work, and hold him liable for the expense. On the day last named the tenant had done nothing towards complying with the orders, and then and upon the trial claimed that he was not bound to comply with the orders of the building department, as he had not stipulated to do so in the lease. The landlords then requested permission to go upon the premises to make necessary repairs, which was at first refused, but we infer from the testimony that this refusal was subsequently withdrawn, as the landlords' agents did go upon the premises, apparently with the permission of the tenant. On the 4th May the tenant's attorney wrote a letter, in which he stated that the tenant would insist that the work which was to be done should be done in such a manner as to avoid injuring his property, and as quickly as possible, and that he should claim he would not be obliged to pay any rent during the time he was unable to fully use the premises. Thereafter, the landlords, by their agents, tore up a portion of the rear floor, took out some of the beams, replacing them with new ones, and tore down a rear building, forming a part of the demised premises, which had before been used as a stable, and left the materials in the yard and in front of the premises, in consequence of which the tenant testified he could not continue his business as a saloon-keeper. It was also claimed on behalf of the tenant that the water-pipes were cut off from the upper floors, preventing the subtenants from using the water; but on behalf of the landlords it was insisted that the deficiency in the supply of water was caused by a leakage in the pipes.

There can be no doubt that, under the law as frequently declared in this state, these acts on the part of the landlords, whether done under the orders

of higher authority or not, so seriously affected the beneficial use of the premises as would have justified the tenant in removing from them as on an eviction, and had he done so he would have been fully justified. Indeed, the landlords foresaw that the repairs were of such a nature as would seriously interfere with the use of the premises, and offered to relieve the tenant from all liability if he would surrender the lease. This he persistently declined to do; and the question is whether, under such circumstances, he can insist upon remaining in possession of a portion of the premises, while temporarily deprived of the beneficial use of other portions, without paying the whole rent, or at least some rent for that part used by him. By the terms of the lease the tenant covenanted to take good care of the house and its fixtures, suffer no waste, and also at his own expense make all repairs required to the plumbing work, pipes, furnace, range, and fixtures belonging thereto, and that he should not call upon the landlords for any disbursements or outlay during the term, and to surrender the demised premises in good order and condition, damage by the elements excepted, at the expiration of the term; and he further covenanted to promptly execute and fulfill all the ordinances of the city corporation applicable to the premises, and all orders and requirements imposed by the board of health and the police department for the correction, prevention, and abatement of nuisances and other grievances. While the exact nature of the orders of the board of health and of the building bureau does not appear from the return, yet it is clear that, whatever they were, the tenant refused compliance with them. And there is no evidence in the case from which either the court below or this court can determine whether he was justified in so doing, or whether or not the orders were reasonable. In the absence of such evidence, we must assume that public officers would only do their duty, and require that to be done which the circumstances of the case demanded. The tenant, in taking the premises, took them as they stood, and was bound to surrender them in as good condition as he received them, damages by the elements excepted; and he was not to call upon the landlords for any outlay or disbursements during the term. Whatever these orders were, the tenant was under covenant to perform them so far as the health department, at least, was concerned, which he refused to do. It is the duty of a tenant to make all repairs to a building to keep it in a tenantable condition, and a landlord is not required to make them unless there is an express covenant on his part so to do; and if for any reason, therefore, the building becomes out of repair to such a degree that it cannot be permitted to remain in that condition, it is a breach of the covenant by the tenant. *Suydam* v. *Jackson*, 54 N. Y. 450. It is not clear from the return what was the cause of the premises in question falling into such a state as to call for the interference of the officers charged with the safety of buildings. It certainly does not appear that it was through any fault or negligence on the part of the landlords. It may have been through the fault of the tenant, (although that does not appear,) or the result of gradual decay, and that to such an extent that possibly the tenant was not bound to do what was required to make the building safe.

The tenant having refused to comply with the orders served upon him, it became necessary for the landlords to do it themselves, or, if they neglected this, the building bureau had the right, under the law, to enter upon the premises, and do what was required, and charge it against the property, which would doubtless have been at an increased expense to whoever was bound to pay for it. Under such circumstances we think the landlords had a right to enter upon the premises to do what repairs were necessary, and that such entering and making repairs did not amount to an eviction. Even the tearing down of a building pursuant to a lawful order or mandate of a public officer does not amount to this. *Connor* v. *Bernheimer*, 6 Daly, 295. In that case it was said: "Where there is no covenant on the part of the landlord to

repair or build, and none is implied in a covenant of quiet enjoyment, (*Brown* v. *Quilter*, Amb. 621,) the tenant takes the premises as they are; and if, in consequence of natural decay, * * * it becomes indispensable, as a public duty for the public safety, to take down the building to prevent it falling down, there is no violation of the covenant for quiet enjoyment. * * * The taking down of a building, as an act of necessity, to prevent its falling down, either by the public authorities or in obedience to their orders, is not an eviction or disturbance of the possession by title paramount; there being no question of title involved in such an act." If the total destruction of a building under such circumstances does not amount to an eviction, then the entering upon premises, and making repairs intended to render them safe, cannot.

It is doubted whether the landlords' entry in this case amounted to an unjustifiable trespass; but, even if it did, a mere trespass would not relieve the tenant from the payment of rent. This was expressly held in *Edgerton* v. *Page*, 20 N. Y. 281. The court, by GROVER, J., said: "I cannot see upon what principle the landlord should be absolutely barred from a recovery of rent, when his wrongful acts stop short of depriving the tenant of any portion of the premises. The injury inflicted may be to an extent much larger than the whole rent, or it may be of a trifling character. In all the cases where it has been held that the rent was extinguished or suspended, the tenant has been deprived, in whole or in part, of the possession by the wrongful act of the landlord, either actually or constructively. There is no authority extending the rule beyond this class of cases. It would be grossly unjust to permit a tenant to continue in the possession of the premises, and shield himself from the payment of rent by reason of the wrongful acts of the landlord, impairing the value of the use of the premises to a much smaller amount than the rent. This must be the result of the rule claimed by the defendant. The moment that it is conceded that the injury must be equal to the amount of the rent, the rule is destroyed. It would then only be recoupment to the extent of the injury." In *Insurance Co.* v. *Sherman*, 46 N. Y. 370, the court, after referring to those cases where there was an injury to the beneficial use of premises sufficient to constitute a constructive eviction, say: "But the tenant must quit possession in consequence of such interference. * * * This distinction will reconcile the authorities, which otherwise may seem conflicting. The rule to be gathered from all the authorities, and which accords with good sense, is that a person cannot remain in possession of premises, and still claim he has been turned out; nor, when a judgment of a competent court has determined that he shall deliver possession to a particular person, need he wait to be forcibly ejected." See, also, *Boreel* v. *Lawton*, 90 N. Y. 293; *Kelly* v. *Miles*, 48 Hun, 6; *Academy, etc.*, v. *Hackett*, 2 Hilt. 217. And this rule was followed by this court in *Koehler* v. *Scheider*, (Com. Pl. N. Y.) 4 N. Y. Supp. 611. In the case under consideration the tenant admitted on the trial that he was still in possession of the premises, or, rather, that he had not surrendered possession, which amounts to the same thing; also that he had, under protest, paid the rent for the month of June after the landlords had done much of the work; and we do not think the protest can avail him in such a proceeding as this. It was also shown that his subtenants were still in possession of the upper floors, and it was not shown that the landlords were in the actual, final occupation of any part of the premises, or that the tenant was excluded finally from any part of them; and this, we think, was essential to the tenant's defense, even under the authorities relied on by him. The case of *Christopher* v. *Austin*, 11 N. Y. 216, was decided on the strength of *Dyett* v. *Pendleton*, 8 Cow. 731. In the former case the exact circumstances are not stated, except that the landlord entered and actually evicted the tenant from a part of the premises, and kept him out during the whole term, and that the tenant occupied the remaining portion. The opinion

quotes from *Dyett* v. *Pendleton, supra,* "that there is a great principle that a tenant shall not be required to pay rent, even for the part of the premises which he retains, if he have been evicted from the other part by the landlord;" and this is clearly *obiter,* for in that case, which is the leading one on constructive eviction, the tenant left the rooms leased to him on account of the disorderly conduct of the landlord and his tenant in adjoining apartments, rendering it unsafe for the morals of his family to remain longer. The true reasoning in that case is that an eviction by the landlord destroys the consideration for which rent is to be paid, and where there is a total failure of consideration the contract is not binding, and that this eviction may be brought about by moral as well as physical causes. While *Christopher* v. *Austin* has not been expressly overruled by the authorities we have before cited, it certainly can only be regarded as authority for holding that no rent need be paid when the landlord has excluded the tenant from a part of the premises, and used such part for his own purposes. And this is in harmony with *Lawrence* v. *French,* 25 Wend. 443, where Judge NELSON says: "A mere trespass by the lessor will not suspend the rent, as where he entered and destroyed a building, (*Hunt* v. *Cope,* Cowp. 242;) but, where he railed off part of the premises, the act had that effect, (*Smith* v. *Raleigh,* 3 Camp. 513.)" *Carter* v. *Byron,* (Sup.) 1 N. Y. Supp. 905; *People* v. *Gedney,* 10 Hun, 151; *Cement Co.* v. *Radskey,* 14 N. Y. St. Rep. 82,—all involved an actual, final occupation by the landlord of a part of the demised premises to the exclusion of the tenant. Indeed, the latter case is distinguished by the court from *Edgerton* v. *Page* and *Boreel* v. *Lawton, supra,* on the very ground of actual and final exclusion. This we have before shown was not established in this case.

In summary proceedings by a landlord against a tenant to recover possession of the demised premises after default in the payment of rent, a counterclaim cannot be pleaded. The only answer he can make is a general denial, or a denial of specific allegations of the petition. Under denial of the averment that rent is due, and that the tenant has made default in the payment thereof, he may prove payment, or that for any reason no rent is due. *Durant Land Imp. Co.* v. *East River Electric Light Co.,* (Com. Pl. N. Y.) 6 N. Y. Supp. 659; Code, § 2244. It is not even a sufficient answer to the proceeding that the full amount of the stipulated rent is not payable. If any rent is due, the landlord is entitled to a final order in his favor. *Jarvis* v. *Driggs,* 69 N. Y. 147. It therefore follows that the judgment dismissing the proceeding in this case must be reversed.

Having arrived at this conclusion, it is unnecessary to examine particularly the various exceptions to the admission or exclusion of evidence. It may be said, however, that copies of orders of the health department or the building bureau, are not of themselves, as a rule, evidence as against third parties; and that the contents of a letter written by an attorney are not, except for certain limited purposes, as proving a demand and the like, admissible in evidence in his favor, unless they form a part of a series, a portion of which has been introduced in evidence, and without which those in evidence cannot be fully understood.