### BARNUM *et al. v.* FITZPATRICK.

*(Common Pleas of New York City and County, General Term.* June 6, 1892.)

**1. LANDLORD AND TENANT—EVICTION OF TENANT.**

While a tenant was in possession under a lease, with covenants of the tenant to repair, and that the landlord should not be called on for any disbursements or outlays, and that the tenant would comply with all city ordinances, and "all orders and requirements of the board of health," several orders from the board of health and building bureau of the city were served on him requiring repairs and changes to be made. Upon the tenant's failing to comply with these orders, the landlord, apparently with the tenant's permission, entered the premises, and made repairs in the house, and also razed the stable. The tenant paid rent during a part of the time repairs were being made, and remained in possession of part of the premises, although he was notified by the landlord that he would not be held liable to comply with the orders of the two departments if he would surrender possession. *Held,* that the acts of the landlord did not amount to eviction, relieving the tenant from payment of a part of the rent.

**2. SAME—PLEADING—FINAL ORDER.**

In summary proceedings to recover possession of demised premises for nonpayment of rent, the tenant cannot plead a counterclaim, and if any portion of the rent is shown to be due, the landlord is entitled to a final order.

16 N. Y. Supp. 934, approved.

Appeal from fifth district court.

Action by Sarah A. Barnum and others against John Fitzpatrick, tenant. From a final order awarding the plaintiffs the delivery of the possession of premises known as "320 Stanton Street," New York, for the nonpayment of rent, defendant appeals. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

*Frank Moss,* for appellant.   *Hatch & Warren,* for respondents.

BOOKSTAVER, J.   When this case was before us upon a former appeal, we fully and at some length examined both the facts and the law, and it will be unnecessary to do so again, except in so far as the new trial has presented a different state of facts. Upon the second trial all of the correspondence between the attorneys for the respective parties and the orders of the health and fire departments were admitted in evidence, and the return shows that nearly all, if not all, of what was done by the landlords was in consequence of these orders and the tenant's refusal to comply with them.

First, as to the rear building on Goerck street, called a "barn" or "stable" in the testimony and briefs of counsel, the acts of the landlords in regard to which are most bitterly complained of by the tenant. On or about the 24th February, 1891, the health department served an order requiring the drain from the hopper closet and hydrant to be disconnected from a cesspool in the yard, and connected with the house drain by continuous pipes, and that the stable floor be graded to a properly trapped, sewer connected drain. This was not primarily the landlords' duty, as there was no covenant in the lease on the part of the landlords to make any repairs whatever to the premises during the term of the lease, and the tenant expressly covenanted to execute and ful-

fill all the ordinances of the city corporation applicable to the premises, and all orders and requirements imposed by the board of health and the police department for the correction, prevention, and abatement of nuisances or other grievances in, upon, or connected with the premises during the term, at his own expense; and had further covenanted not to call upon the landlords for any disbursements or outlay during said term; and, notwithstanding this order was called to his attention, the tenant neglected and refused to comply with it. Thereafter, and on the 3d March, 1891, an order of the fire department was served upon the parties to this proceeding, requiring them to make the stable safe by taking down the rear wall and rebuilding the same, and also requiring them to take down the cracked and bulged portions of the southerly wall. It does not appear from the return how these two walls became so dilapidated as to require such extensive repairs, but, as the landlords had not covenanted with the tenant to make any, they, of course, were not bound to do so, as far as the tenant was concerned. If he desired the continued use of this building after the orders of the fire department, it was his duty to have made the repairs himself. But this he also refused to do. At the time the last notice was served, the parties hereto were notified that, unless they immediately certified to the superintendent of buildings their assent or refusal to make the building safe, a survey would be ordered to be held thereon, and all costs and expenses incurred therein would become a lien on the building; and, the tenant having refused to do anything towards compliance with either of these orders, it became necessary for the landlords to do it themselves, for, if they neglected, the fire department had the right, under the law, to enter the premises, and do what was required, and charge the amount against the property, which would doubtless have been at an increased expense to whoever was bound to pay for it. But tearing down the rear and side walls rendered the stable unfit for use for any purpose, and would naturally cause the remaining walls to be unfit and dangerous; and therefore the landlords would either have to rebuild or tear all the walls down, and, as they were under no covenant to repair, they were not bound to rebuild. When this action was before us on a former appeal, we showed that the tearing down of a building under such circumstances did not amount to an eviction, or even to an unlawful trespass. 16 N. Y. Supp. 934; *Brown* v. *Quilter*, Amb. 621. And the supreme court, second department, arrived at the same conclusion in *White* v. *Thurber*, 8 N. Y. Supp. 661. We do not think that the acts of the landlords in tearing down this stable were, under the circumstances, either willful or malicious, as claimed by the appellant. There is not the least intimation in the return that these orders were procured at the instigation of the landlords, or for the purpose of having the buildings torn down or removed. All that they did was rendered necessary by lawful authority, unless, indeed, they had chosen to rebuild, which they were not bound to do, as before shown.

After what was said on the former appeal, it is not necessary now to review at length the various orders of the health and fire departments relating to the front building on Stanton street. It is sufficient to say that the orders of these departments admitted in evidence upon the last trial fully justified the inferences of the court on that appeal. These orders required extensive repairs to that building, so extensive in fact as to have seriously affected the beneficial use of the premises, and would have justified the tenant in removing from them as on an eviction, and, had he done so, the landlords could not have complained. Indeed, they foresaw that the repairs were of such a nature as would seriously interfere with the use of the premises, and offered to relieve the tenant from all liability if he would surrender his lease. This, however, he persistently declined to do, but remained in possession at the time these proceedings were commenced, as did also his subtenants, from whom he collected rent for the month of July, although he refused to pay the

landlords his rent for that month, on account of which this proceeding was brought; and, as shown on the former appeal, it was not a sufficient answer to the proceeding that the full amount of the stipulated rent was not payable, and that the landlords were entitled to a final order if any rent was due; also that, in summary proceedings by a landlord against a tenant to recover possession of demised premises, the latter could not plead a counterclaim in answer to the proceeding. There is nothing in the return which would lead us to believe that at the time the landlords instituted this proceeding they were not acting in good faith, either in commencing the proceeding or in doing the work which they were required by higher authority to do, or that they at that time intended to delay the work so as to seriously interfere with the tenant's use of the premises. Much of the delay, it seems to us, was occasioned by the tenant himself refusing to assist the landlords by the removal of his property on the premises to be repaired. The question must be determined as of the time when the proceeding was instituted, and not by subsequent acts. We therefore think the final order should be affirmed, with costs. All concur.